UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ERIC JOSEPH LOVE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 1:19-cv-00120-JRH-BKE |
| ) | |
| AUGUSTA-RICHMOND COUNTY, GEORGIA; ) | |
| RICHARD ROUNDTREE, in his official ) | |
| capacity as Sheriff with Richmond County ) | |
| Sheriff's Office, and JEFF JOHNSON, ) | |
| individually and in his official capacity as Deputy ) | |
| with Richmond County Sheriff's Office, ) | |
| ) | |
| Defendants. | |

### REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

In opposing Love's request for preliminary injunctive relief, Augusta-Richmond County does not seriously dispute that amplified speech finds protection under the First Amendment. Nor can it. "[T]he use of sound amplification equipment within reasonable limits is an aspect of free speech protected by the First Amendment." *Reeves v. McConn*, 631 F.2d 377, 382 (5th Cir. 1980).[1] Neither does Augusta-Richmond County quarrel with the status of sidewalks and ways as traditional public fora. (*See* Response to Motion for Preliminary Injunction ["Resp."], p. 3). The sole issue in dispute is whether the restrictions that Augusta-Richmond County imposes on protected speech in public fora are constitutionally valid.

Contending its restrictions are appropriate, Augusta-Richmond County blithely refers to § 3-6-2(c) as only preventing "loud, amplified speech." (Resp., p. 5). It glosses over the fact that

---

[1] *Reeves* is binding precedent in the Eleventh Circuit. *See Pine v. City of West Palm Beach*, 762 F.3d 1262, 1274 n. 7 (11th Cir. 2014) (recognizing *Reeves* as binding precedent).

1

the ordinance automatically pegs any amplified speech as "loud," or otherwise "disturbing" or "unnecessary," any time speech on a public street is used to "attract[] the attention of the public to any building or structure," regardless of volume level. (Ex. I; Section 3-6-2(c)). Whispering through an amplified device is enough to violate the ordinance. Moreover, in construing and applying this section even broader, Augusta-Richmond County prohibits any amplified speech expressed in front of a building or structure. (*See* Ex. H; Resp., pp. 8-9).

This is precisely how Augusta-Richmond County enforced the restrictions on the scene against Love and how they warned of future enforcement in their subsequent letter to him. On the day of the arrest, police officers told Love he could not use his amplifier at all. (Ex. A, ¶¶ 28-29, 33-34; *see* Ex. H, "the deputies [] informed Mr. Love that amplifiers were prohibited."). At no point did the officers suggest to Love that his volume was too loud or that he would be allowed to resume his use of amplification at a lower volume. (*See generally*, VC, ¶¶ 38-49; Ex. A, ¶¶ 26-40). Love's volume level was deemed irrelevant; as the citation affirms, they arrested Love for "using a microphone" and (allegedly) declining to cease use of it. (*See* Ex. E).[2] Following up on this action, Augusta-Richmond County later confirmed via letter of counsel that Love's amplified speech is banned altogether, declaring: "Ordinance § 3-6-2 clearly prohibits the use of sound amplifiers for the purpose of attracting attention." (Ex. H). This response to Love's plea does not limit the prohibition to "loud" amplification, nor does the letter dispute that Love had used the amplifier at a reasonable (*i.e.*, not loud) volume. (Ex. H; *see* Ex. G). Indeed, Augusta-Richmond County assures Love, because it bans amplified speech outright, that the use of an amplifier for delivering a message is also considered illegal loitering under § 3-7-1(r), on

---

[2] Love had actually stopped using his amplifier for several minutes prior to his arrest. (Ex. A, ¶¶ 31-37). The officers arrested Love because he kept the amplifier on (without using it) and objected to the ban. (Ex. A, ¶¶ 31-37).

2

the notion that a law-abiding individual could not reasonably believe amplified speech on a public sidewalk is a lawful activity. (Ex. H; Resp., ¶ 10).[3]

In short, Augusta-Richmond County's restrictions ban Love from using amplification at any time, at any volume, anywhere in the county whenever the speech "attract[s] attention" to anything. (Ex. H). Divorced from any legitimate government concerns, the ban violates Love's constitutional rights. Thus, the preliminary injunction he seeks – narrowly enjoining Augusta-Richmond County's ban on amplified speech on public sidewalks – is warranted and needed.

### I.   LOVE IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

Augusta-Richmond County's scheme banning amplification in public violates the constitutional rights of Love as well as others. The restrictions intrude upon the First Amendment, curbing far more speech than necessary to serve any legitimate government interest. And the application of the ordinances further contravenes Due Process under the Fourteenth Amendment, being incongruent with the literal text.

#### A. Ban on Amplified Speech Violates Free Speech

Though the prevention of excessive noise can be a laudable goal, Augusta-Richmond County's ban on amplification is not a narrowly (or even remotely) tailored way to address it.

Amplified speech does not necessarily generate excessive noise, especially, noise that would be excessive for the venue in question. As the appellate court recognized in *Reeves*, amplified speech is inherently compatible with downtown city sidewalks, conclusively holding that a city-wide ban on amplification at any volume and at most times of day is not a sufficiently tailored measure. *Reeves*, 631 F.2d at 384-85. The court held a government entity "may not

---

[3] Augusta-Richmond County's Response omits any reference to the clarifying letter, but it cannot refute the existence, import and effect of the letter. *See* Defendants' Answer ¶¶ 54-56 (admitting that the letter means what it says).

broadly prohibit reasonably amplified speech merely because of an undifferentiated fear that disruption might sometimes result." *Id.* at 388.

In contravention of precedent, this is what Augusta-Richmond County does, banning all amplification that "attract[s] attention," regardless of volume, in the name of weeding out excessive volume.[4] Tellingly, Augusta-Richmond County is unable to cite any cases from any jurisdiction upholding a ban on amplified speech because it has the effect of "attracting attention." The suitable way to address excessive volume is to regulate volume itself. *See Saia v. New York*, 334 U.S. 558, 562 (1948) ("Noise can be regulated by regulating decibels."). While it is not necessary for a municipality to dictate noise level through specific decibel levels, a municipality must at least show a direct connection between its purported concern with volume and the restrictive means it utilizes. Augusta-Richmond County utterly fails to do so, as a speaker can easily "attract[] attention" with non-excessive or even no volume.

The two cases Augusta-Richmond County cites do not support its ban, dealing with far narrower restrictions on amplification. (*See* Resp., pp. 5-6). In *Pine v. City of W. Palm Beach*, the ordinance evaluated there only restricted amplified sounds produced within 100 feet of the property line of a health care facility; the restriction was narrow in space to serve the special concerns of noise impacting patient health. 762 F.3d 1262, 1264, 1273-74 (11th Cir. 2014). And in *Kovacs v. Cooper*, the Supreme Court upheld a ban on "loud and raucous" use of amplification; that restriction targeted volume itself, not all amplification, permitting amplified speech at a reasonable volume. 336 U.S. 77, 89 (1949) ("Section 4 of the ordinance bars sound

---

[4] Augusta-Richmond County is mistaken in suggesting that "amplified speech" is not a "protected medium of expression," but "[t]alking or speaking is the medium of expression at issue in this case." (See Resp., p. 6). In *Reeves*, the court recognized amplified speech as a distinct means of expression. *Reeves*, 631 F.2d at 382. And, amplified speech is what is at issue in this case.

trucks from broadcasting in a loud and raucous manner on the streets."). Conversely, Augusta-Richmond County bans amplified speech that "attract[s] attention" at any volume, at all times, anywhere in the county. (*See* Ex. H; Ex. I). That is the type of broad restriction the Supreme Court in *Kovacs* opined would be "probably unconstitutional," 336 U.S at 81-82, and the appellate court in *Reeves* confirmed to be unconstitutional. 631 F.2d at 383-85. Augusta-Richmond County's ban on amplified speech that "attract[s] attention" burdens substantially more speech than necessary to address the legitimate interest of excessive volume. It is not narrowly tailored.[5]

The amplified speech ban also does not leave ample alternatives for Love's message, which is a separate and additional basis for invalidating the restriction. *See Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1344 (11th Cir. 1994) (emphasizing that speech restrictions must be both narrowly tailored "*and*" leave ample alternatives) (emphasis in original). The Supreme Court has held that foreclosing a uniquely effective medium of expression fails to leave ample alternatives for the speech. *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). And, *Reeves* acknowledges that unamplified speech is not a good substitute for the effectiveness of amplified speech. *Reeves*, 631 F.2d at 382.

---

[5] Augusta-Richmond County insinuates that the standard of "target[ing] and eliminat[ing] no more than the exact source of the 'evil' it seeks to remedy" enunciated by the Supreme Court in *Frisby v. Schultz*, 487 U.S. 474, 485 (1988), equates to a "least restrictive means" analysis and was overruled by *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). (*See* Resp., pp. 4-5). Augusta-Richmond County is wrong on both counts. *Frisby* explains that narrow tailoring requires targeting of the harm itself, not all expression that might create the harm as a "possible byproduct" if abused. 487 U.S. at 485-86. The Court in *Ward* cited this very proposition in *Frisby* approvingly in explaining the "burden substantially more speech than is necessary" standard. *Ward*, 491 U.S. at 799-800. *Ward* recognizes that a restriction that targets or eliminates a substantial amount of speech that does not cause the asserted harm is not a narrowly tailored law. *Id.*

This constitutional principle is well-illustrated by the facts of this case. Love seeks to speak conversationally and be heard by multiple passersby in the near vicinity simultaneously. (VC, ¶ 13; Ex. A, ¶¶ 9-12). The conversational tone he uses is essential to his message being well-received, and passersby cannot hear Love speaking in this tone without amplification. (VC, ¶ 17; Ex. A, ¶¶ 11-12, 22). Augusta-Richmond County's supposed "alternative" of approaching individuals one-on-one to have conversations (Resp. pp. 6-7) is inadequate because it would keep Love from being heard by more than one person at a time and cause him to lose much of his audience. The First Amendment presumes that the speaker knows best both what to say and how to say it. *Riley v. Nat'l Fed'n of the Blind of NC, Inc.*, 487 U.S. 781, 790-91 (1988). *Pine*, which Augusta-Richmond County relies on, does not indicate otherwise. In addition to allowing unamplified forms of speech within the narrow 100-foot zone, the restriction in *Pine* allowed for the use of amplification outside that zone, even if it could be heard within. *Pine*, 762 F.3d at 1275. In contrast, Augusta-Richmond County's ban is county-wide, leaving no place available for amplified speech, preventing Love's message from being heard by his desired audience.

### B. Ban on Amplified Speech Violates Due Process

In addition to violating Free Speech, the ban on amplified speech is unconstitutionally vague in violation of Due Process. Augusta-Richmond County argues that the language of § 3-6-2(c) is clear and thus not vague. (Resp., pp. 8-9). The reasoning is misguided. Love's challenge to § 3-6-2(c) primarily concerns its vague application to his non-commercial, religious expression, not necessarily how the ordinance reads.[6] On its face, the ordinance only

---

[6] This is not to say § 3-6-2(c) is constitutional on its face, for its facial validity is doubtful. It is far from clear what constitutes a "purpose of…attracting the attention of the public to any building or structure" or how police could assess such a purpose. Also, read literally, the ordinance prohibits obvious protected amplified speech, like that associated with organized labor

criminalizes amplified speech that has the "purpose" of attracting the attention of the public to a building or structure. (Ex. I).[7] Love's undeniable purpose is to attract attention to his religious beliefs, not to any building or structure, and his message does not reference any buildings or structures. (*See* VC, ¶¶ 11, 14; Ex. A, ¶¶ 4-5). Through a distorted and highly unexpected interpretation, Augusta-Richmond County applies the ordinance to Love's amplified religious speech on the theory that it allegedly has the effect of attracting attention to buildings that are near to him. (Resp., pp. 8-9).[8] In practice, this means that it is illegal in Augusta-Richmond County to use an amplifier while standing in front of a building or structure. The language of the ordinance does not support this strained interpretation, and no reasonable person could guess it. Section 3-6-2(c) is vague as applied to Love's expression.

Ordinance § 3-7-1(r) is likewise vague as-applied, and particularly, in conjunction with Augusta-Richmond County's vexing interpretation of § 3-6-2(c). Augusta-Richmond County figures Love should know his amplified speech is illegal and not the activity a law-abiding citizen would conduct as mandated under § 3-7-1(r).

But there is no way Love could anticipate this unusual application of laws. Amplified speech is legitimate speech deserving of constitutional protection. *Saia*, 334 U.S. at 561-62; *Reeves,* 631 F.2d at 382. And § 3-6-2(c) does not on its face prohibit amplification outright. It is therefore eminently reasonable for Love to believe that his amplified religious speech – uttered at

---

picketing. However, as Love's expression is beyond any conceivable meaning of the ordinance, his primary focus with his challenge is the vague application of the ordinance to his speech.

[7] The ordinance also prohibits amplified speech with the purpose of commercial advertising, but Love does not engage in such and Defendants have never suggested the contrary.

[8] In this regard, Augusta-Richmond County provides no evidence whatsoever that Love's expression has this effect. (*See* Resp., pp. 8-9). Nor is it apparent how merely standing near a building while discussing topics unrelated to the building can draw attention to the building rather than the speaker or his message.

a reasonable volume, and for the purpose of conveying his message – is "usual for law-abiding individuals." Applying § 3-7-1(r) to treat Love like a criminal for merely using an amplifier on a public sidewalk is vague as-applied as well as on its face.[9]

## II.     OTHER INJUNCTION FACTORS ARE MET

Given the unconstitutionality of Augusta-Richmond County's ban on Love's amplified speech, the irreparable injury inflicted on Love is manifest: he is perpetually banned from engaging in amplified speech at any volume, at any time, on any public sidewalk in the county. Augusta-Richmond County suggests that a First Amendment violation like this one does not automatically require a finding of irreparable injury, but as the Eleventh Circuit recognized in *KH Outdoor, LLC v. City of Trussville*, the irreparable injury requirement is "easily satisfied," where, as here, a speech restriction categorically bars a protected means of communication. 458 F.3d 1261, 1271-72 (11th Cir. 2006) (restriction on use of billboards).

The deprivation Love suffers regarding the violation of his constitutional rights clearly outweighs any interest of Augusta-Richmond County in banning amplification at non-excessive volumes at all times throughout the county. The narrow injunction sought will in no way prevent Augusta-Richmond County from enforcing proper restrictions that focus on excessively loud

---

[9] For the reasons set out in Plaintiff's Initial Memorandum, § 3-7-1(r) is also unconstitutionally vague on its face. (*See* Initial Memo, pp. 15-16). Augusta-Richmond County relies on *Bell v. State,* 252 Ga. 267 (1984), and *State v. Burch* State v. Burch, 264 Ga. 231 (1994), from the Georgia Supreme Court, in arguing to the contrary. (Resp., p. 9).  Neither case is germane, concerning conduct that has the appearance of true criminal behavior: squeezing through a locked gate at midnight (*Bell,* 252 Ga. at 268) and climbing a six-foot high, razor-wire-topped fence around an automobile dealership (*Burch,* 264 Ga. at 231).  Those cases also dealt with a state statute, OCGA § 16-11-36, and not the specific ordinance at hand.  Accordingly, whatever the state court conceived about the meaning of the statute in light of the state legislature's intent, *see Bell,* 252 Ga. at 269-70, 273 (focusing on state legislature's intent in construing ordinance), it says nothing about § 3-7-1(r)'s meaning in light of Defendants' expressed intention to prohibit amplified speech on public sidewalks. (*See* Ex. H).

noise. The injunction will only prevent it from enforcing its ongoing flat ban on amplified speech that "attract[s] attention" on public sidewalks. Neither is there any merit to the spurious insinuation that the injunction will not let Augusta-Richmond County "protect its citizens from…behaviors that threaten public safety" (Resp., p. 11). The order would limit further misuse of the "loitering" ordinance to punish protected amplified speech at a reasonable volume. And, regarding the public's interest, "it is always in the public interest to protect First Amendment liberties" against overly broad speech restrictions. *KH Outdoor,* 458 F.3d at 1272 (citation omitted).

## CONCLUSION

For the reasons discussed herein, as well as those expressed in his Initial Memorandum, Love respectfully requests that this Court grant his Motion for Preliminary Injunction.

Respectfully submitted,

| | |
|---|---|
| s/ Nathan E. Huff<br>GA Bar No. 773611<br>Cleary, West & Huff, LLP<br>1223 George C. Wilson Dr.<br>Augusta, GA 30909<br>706-860-9995 telephone<br>Email:  nhuff@cwhllp.com<br><br>Attorney for Plaintiff | s/ Nathan W. Kellum [Lead Counsel]*<br>TN BAR #13482; MS BAR # 8813<br>Center for Religious Expression<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN 38117<br>(901) 684-5485 telephone<br>Email: nkellum@crelaw.org<br><br>Attorney for Plaintiff<br><br>*Admitted to practice *pro hac vice* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing, this 10th day of September, 2019.

/s/ Nathan W. Kellum
Nathan W. Kellum